UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID C. PATKINS,<br><br>        Plaintiff,<br><br>    v.<br><br>ALOMARI, et al.,<br><br>        Defendants. | Case No.  1:14-cv-00674-JLT (PC)<br><br>**AMENDED ORDER REQUIRING PLAINTIFF TO EITHER FILE AMENDED COMPLAINT OR NOTIFY COURT OF WILLINGNESS TO PROCEED ONLY ON CLAIMS FOUND TO BE COGNIZABLE**<br><br>**(Doc. 1)**<br><br>**RESPONSE DUE WITHIN 30 DAYS** |

**I.    Background**

Plaintiff, David C. Patkins, is a prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR").  Plaintiff is proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff filed the Complaint in this action on May 7, 2014.  (Doc. 1.)[1]

**A.    Screening Requirement**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally frivolous, malicious, fail to state a claim upon which relief may be granted, or that seek monetary

---

[1] All references to pagination of specific documents pertain to those as indicated on the upper right corners via the CM/ECF electronic court docketing system.

1

relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1),(2); 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

### B. Summary of Plaintiff's Complaint

Plaintiff complains of acts that occurred while he was housed at California Correctional Institute ("CCI") in Tehachapi, California.  Plaintiff names Appeals Coordinator I. Alomari, Correctional Officers I. Vargas and Davies, Sergeant T.C. Davis, CCII M. Nipper, and Associate Wardens S. Reed and R. Hughes as Defendants in this action.  Plaintiff seeks monetary damages.

Plaintiff alleges that his access to the courts was obstructed as he was prevented from effectively utilizing the institutional grievance procedure at CCI and that he was retaliated against for attempting to do so.  The details of Plaintiff's allegations against each Defendant are discussed where applicable below.

Plaintiff has stated a few cognizable claims and may be able to amend to correct the deficiencies in his pleading so as to make additional claims cognizable.  Thus, he is being given the applicable standards based on his stated claims and leave to file a first amended complaint or to notify the Court that he desires to proceed on the claims found cognizable in this order.

### C. Pleading Requirements

#### 1. Federal Rule of Civil Procedure 8(a)

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions," none of which applies to section 1983 actions. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002); Fed. R. Civ. Pro. 8(a).  A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."  Fed. R. Civ. Pro. 8(a). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512.  However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." *Neitze v. Williams*, 490 U.S. 319, 330 n.9 (1989).  "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997) quoting *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Iqbal*, 556 U.S. at 678, quoting *Twombly*, 550 U.S. at 555. Factual allegations are accepted as true, but legal conclusions are not. *Iqbal.* at 678; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009); *Twombly*, 550 U.S. at 556-557. While "plaintiffs [now] face a higher burden of pleadings facts . . ," *Al-Kidd v. Ashcroft*, 580 F.3d 949, 977 (9th Cir. 2009), the pleadings of pro se prisoners are still construed liberally and are afforded the benefit of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). However, courts are not required to indulge unwarranted inferences. *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" fall short of satisfying the plausibility standard. *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949; *Moss*, 572 F.3d at 969.

If he chooses to file a first amended complaint, Plaintiff should endeavor to make it as concise as possible. He should merely state which of his constitutional rights he feels were violated by each Defendant and its factual basis. Where the allegations against two or more Defendants are factually intertwined, Plaintiff need not repeat the factual allegations separately against each Defendant. Rather, Plaintiff should present his factual allegations and identify whichever Defendants he feels are thereby implicated.

### 2. Legibility

Plaintiff is incarcerated and is representing himself in this action. Under those circumstances, the Court is lenient in overlooking technical and other errors. However, Plaintiff's

miniscule writing and failure to double space his sentences renders his second amended complaint very difficult to decipher. Plaintiff is required to submit filings that are "clearly legible." Local Rule 7-130(b). In submitting a first amended complaint in compliance with this order, Plaintiff is required to write in larger handwriting and to double space his sentences. Local Rule 7-130(c). The failure to do so will result in an order striking any subsequently amended complaint from the record.

### 3. Exhibits

Plaintiff's Complaint is comprised of approximately 26 pages of factual allegations followed by 230 pages of exhibits.

First, the Court is not a repository for the parties' evidence. Originals, or copies of evidence (i.e., prison or medical records, witness affidavits, etc.) need not be submitted until the course of litigation brings the evidence into question (for example, on a motion for summary judgment, at trial, or when requested by the Court). If Plaintiff attaches exhibits to his amended complaint, the complaint must specifically reference each exhibit. Fed. R. Civ. Pro. 10(c). For example, Plaintiff must state "see Exhibit A" or something similar in order to direct the Court to the specific exhibit Plaintiff is referencing. Further, if the exhibit consists of more than one page, Plaintiff must reference the specific page of the exhibit (i.e. "See Exhibit A, page 3"). Exhibits which are merely attached to the complaint but are not referenced in the complaint will not be considered.

Second, to the extent that exhibits are not referenced in the complaint, Plaintiff is advised that submission of evidence at this time is not proper. Plaintiff is reminded that, for screening purposes, the Court must assume that Plaintiff's factual allegations are true. It is unnecessary for a plaintiff to submit exhibits in support of the allegations in a complaint. Thus, if Plaintiff chooses to file a first amended complaint, he would do well to simply state the facts upon which he alleges a Defendant has violated his constitutional rights and refrain from submitting exhibits unless necessary.

### 4. Linkage Requirement

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff. *See Monell v. Department of Social Services*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). In order to state a claim for relief under section 1983, Plaintiff must link each named defendant with some affirmative act or omission that demonstrates a violation of Plaintiff's federal rights.

Plaintiff must clearly identify which Defendant(s) he feels are responsible for each violation of his constitutional rights and their factual basis as his Complaint must put each Defendant on notice of Plaintiff's claims against him or her. *See Austin v. Terhune*, 367 F.3d 1167, 1171 (9th Cir. 2004).

### 5. Federal Rule of Civil Procedure 18(a)

Fed.R.Civ.P. 18(a) states that "[a] party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party." "Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners pay the required filing fees- for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any

5

prisoner may file without prepayment of the required fees." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) citing 28 U.S.C. § 1915(g).

The fact that claims are premised on the same type of constitutional violation(s) (i.e. retaliation) against multiple defendants does not make them factually related. Claims are related where they are based on the same precipitating event, or a series of related events caused by the same precipitating event. Plaintiff is advised that if he chooses to file a first amended complaint, and fails to comply with Rule 18(a), all unrelated claims will be stricken.

### D.     Claims for Relief

#### 1.  Retaliation

Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so. *Waitson v. Carter*, 668 F.3d 1108, 1114-1115 (9th Cir. 2012); *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir.2009). A retaliation claim has five elements. *Id.* at 1114.

There are five elements that a plaintiff's claim for retaliation must address. First, the plaintiff must allege that the retaliated-against conduct is protected. *Id.* The filing of an inmate grievance is protected conduct, *Rhodes v. Robinson*, 408 F.3d 559, 568 (9th Cir. 2005), as are the rights to speech or to petition the government, *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985); *see also Valandingham v. Bojorquez*, 866 F.2d 1135 (9th Cir. 1989); *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995). Second, the plaintiff must show the defendant took adverse action against the plaintiff. *Rhodes*, at 567. Third, the plaintiff must allege a causal connection between the adverse action and the protected conduct. *Waitson*, 668 F.3d at 1114. Fourth, the plaintiff must allege that the "official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." *Robinson*, 408 F.3d at 568 (internal quotation marks and emphasis omitted). Fifth, the plaintiff must allege "that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution. . . ." *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir.1985).

It bears repeating that while Plaintiff need only allege facts sufficient to support a

plausible claim for relief, the mere possibility of misconduct is not sufficient, *Iqbal*, 556 U.S. at 678-79, and the Court is "not required to indulge unwarranted inferences," *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). The conduct identified by Plaintiff as retaliatory must have been motivated *by* his engaging in a protected activity, and the conduct must *not* have reasonably advanced a legitimate penological goal. *Brodheim*, 584 F.3d at 1271-72 (citations omitted). Thus, mere allegations that Plaintiff engaged in protected activity, without knowledge resulting in animus by a Defendant, is insufficient to show that Plaintiff's protected activity was the motivating factor behind a Defendant's actions.

      Plaintiff alleges that on March 25, 2012, he submitted two inmate grievances and the very next day, Defendants C/Os Davies and Vargas ransacked his cell, accused him of damaging state property, threatening he would have to pay for it, and began rumors via the porters that "something might happen to complainers' property." (Doc. 1, at p. 7, 10) Plaintiff alleges that on June 24, 2012, he handed Defendant C/O Vargas an inmate grievance and the very next day, Defendants C/Os Davies and Vargas again ransacked his cell and issued him an unsubstantiated disciplinary violation (*id.*, at pp. 7, 9) and kept Plaintiff's photo album (*id.*, at p. 14). These allegations state cognizable retaliation claims against Defendants C/Os Davies and Vargas.

      Plaintiff alleges that he was the subject of excessive force (apparently not intended to be part of this action) on which he filed a staff misconduct appeal and that a little over a month later, he was removed from the yard and placed in a holding cage and told to sign a "CDC-114D Fear Order," which he refused. (*id.*, at p. 21). Approximately 20 minutes later, Defendant Sgt. Davis showed up and told him that he was "going to the hole" "for making a staff complaint" and he was placed in Ad Seg for approximately four months thereafter (*id*). These allegations state a cognizable retaliation claim against Defendant Sgt. Davis.

      Plaintiff fails to show that Defendants AC Alomari, CCII Nipper, and/or Associate Wardens Reed and Hughes had knowledge of Plaintiff's protected activities prior to their acts of which Plaintiff complains. Thus, Plaintiff fails to state a cognizable retaliation claim against

Defendants AC Alomari, CCII Nipper, and/or Associate Wardens Reed and Hughes.

### 2. Due Process -- Inmate Appeals/Grievances

Plaintiff appears to grieve the processing, and reviewing of his 602 inmate appeals by Defendants AC Alomari, CCI Nipper, and Associate Wardens Reed and Hughes.

The Due Process Clause protects prisoners from being deprived of liberty without due process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). In order to state a cause of action for deprivation of due process, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). Liberty interests created by state law are generally limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.*

"[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates." *Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982) *accord Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993); *see also Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure); *Massey v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988). "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment." *Azeez v. DeRobertis*, 568 F. Supp. at 10; *Spencer v. Moore*, 638 F. Supp. 315, 316 (E.D. Mo. 1986). Actions in reviewing prisoner's administrative appeal cannot serve as the basis for liability under a § 1983 action. *Buckley*, 997 F.2d at 495. The argument that anyone who knows about a violation of the Constitution, and fails to cure it, has violated the Constitution himself is not correct. "Only persons who cause or participate in the violations are responsible. Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation." *Greeno v. Daley*, 414 F.3d 645, 656-57 (7th Cir.2005) *accord George v. Smith*, 507 F.3d 605, 609-10 (7th

Cir. 2007); *Reed v. McBride*, 178 F.3d 849, 851-52 (7th Cir.1999); *Vance v. Peters*, 97 F.3d 987, 992-93 (7th Cir.1996).

Thus, since he has neither a liberty interest, nor a substantive right in inmate appeals, Plaintiff fails, and is unable to state a cognizable claim against AC Alomari, CCII Nipper, and/or Associate Wardens Reed and Hughes for the processing and/or reviewing of his 602 inmate appeals. [2]

### 3. Access to the Courts

Inmates have a fundamental constitutional right of access to the courts. *Lewis v. Casey*, 518 U.S. 343, 346 (1996). However, "prison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Id.*, at 351 (internal quotes and citations omitted). Claims for denial of access to the courts may arise from the frustration or hindrance of "a litigating opportunity yet to be gained" (forward-looking access claim) or from the loss of a meritorious suit that cannot now be tried (backward-looking claim). *Christopher v. Harbury,* 536 U.S. 403, 412-15 (2002).

"[T]he injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis*, 518 U.S. at 354. Inmates do not enjoy a constitutionally protected right "to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims." *Id.* at 355. Rather, the type of legal claim protected is limited to direct criminal appeals, habeas petitions, and civil rights actions such as those brought under section 1983 to vindicate basic constitutional rights. *Id.* at 354 (quotations and citations omitted). "Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.* at 355 (emphasis in original). "Although prison officials may not obstruct a prisoner's access to the courts by unreasonably

---

[2] To the extent that Plaintiff included allegations regarding the handling of his inmate appeals in an attempt to show exhaustion of his administrative remedies, he is advised that failure to exhaust is an affirmative defense that must be raised by a defendant. *Jones v. Bock*, 549 U.S. 199 (2007). Plaintiff need not demonstrate exhaustion in his complaint. Instead, arguments pertaining to the availability or unavailability of administrative remedies may be raised in response to a defense motion.

blocking his access to a law library, prison officials may place reasonable limitations on library access in the interest of the secure and orderly operation of the institution." *Id.* (citing *Bell v. Wolfish*, 441 U.S. 520, 545-48 (1979)).

The interference, that Plaintiff alleges, with his use of the prison grievance system, in and of itself, does not amount to a cognizable claim for violation of his right of access to the court. Plaintiff's allegations that on June 22, 2012, he submitted an appeal to Defendant C/O Vargas that was never returned to Plaintiff forced "default and loss of non-frivolous deliberate indifference injury suit" (Doc. 1, p. 10) and his allegations that he "sought court resolve -- to no avail" because of Defendant C/O Vargas disposing of his appeals for the "gross, rampant, and escalating pattern of CCI staff misconduct" (*id.*) does not state a cognizable claim against Defendant C/O Vargas for violation of Plaintiff's right of access to the court.  Likewise, Plaintiff's allegations that the actions of Defendants CCII Nipper and AC Alomari "effectively preventing access to the prison grievance process, forcing default of the 9-24-12 appeal" (*id.*, at p. 15) are not cognizable.

Further, Plaintiff's allegations that "the courts fail to acknowledge petitioners non-frivolous case (even disregarding to treat the habeas corpus petition as a writ of mandate for return of property . . . that CCII M. Nipper and AC Alomari has [sic] caused petitioner injury, forcing default to the loss of irreplaceable and sentimental family memories C/O Vargas has stolen" (*id.*, at p. 16)[3] are also not cognizable.  Plaintiff's allegations that he "sought court resolve, to no avail . . . and, forced to default, lost non-frivolous First Amendment Retaliation claim against C/O Vargas" (*id.*, at p. 20)[4] is likewise not cognizable.

However, Plaintiff's allegations in this regard fall short of demonstrating unlawful interference with access to the court.  To assert a forward-looking access claim, the non-frivolous "underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Christopher v. Harbury*, 536 U.S. 403, 416 (2002).

---

[3] It is noteworthy that Plaintiff refers to pages 62-111 of his exhibits attached to the Complaint to support this claim. However, this generalized reference to exhibits violates Fed. R. Civ. Pro. 10(c) and the Court declines to ferret through forty-nine pages of exhibits attempting to support Plaintiff's allegations.

[4] This time, Plaintiff refers to 65 pages of exhibits (pages 112-177) attached to the Complaint which the Court declines to review.

10

To state a claim, the plaintiff must describe this "predicate claim ... well enough to apply the 'non-frivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope." *Id*. It is not enough for Plaintiff merely to conclude that the claim was non-frivolous. Instead, the complaint should "state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a) just as if it were being independently pursued, and a like plain statement should describe any remedy available under the access claim and presently unique to it." *Id*. at 417–418.

Moreover, when a prisoner asserts that he was denied access to the courts and seeks a remedy for a lost opportunity to present a legal claim, he must show: (1) the loss of a non-frivolous or arguable underlying claim; (2) the official acts that frustrated the litigation; and (3) a remedy that may be awarded as recompense but that is not otherwise available in a future suit. *Phillips v. Hust*, 477 F.3d 1070, 1076 (9th Cir.2007) (citing *Christopher*, 536 U.S. at 413–414, overruled on other grounds, *Hust v. Phillips*, 555 U.S. 1150, 129 S.Ct. 1036, 173 L.Ed.2d 466 (2009)).

Here, it appears that Plaintiff contends that the habeas action which, apparently the Court concluded should have been presented as a petition for writ of mandate, was unsuccessful because Defendant C/O Davies failed to issue a log number to one of Plaintiff's inmate appeals.[5] (*id.*, at pp. 8, 54, 55) Why this failure translates to an action which doomed his habeas petition, is not clear. Finally, Plaintiff must demonstrate that the remedy he sought in the prior action is no longer available. Because he has failed to state facts to support each of these elements, he has not stated a cognizable claim against Defendant C/O Davies for violation of Plaintiff's right of access to the court.

### 4. Supervisory Liability

---

[5] Notably, the Monterey County Superior Court allowed that Plaintiff could submit a copy of the appeal log to demonstrate that he "appealed the failure to process or respond to his appeal or the requests submitted to either facility. Petitioner has the ability to obtain copies of the inmate appeals tracking system log. **Petitioner should submit a copy of the log reflecting his appeal was received. This will enable the court to determine if prison officials are in fact failing to timely process appeals.**" (Doc. 1 at 55) However, there is no showing that Plaintiff ever did so.

It appears that Plaintiff may have named CCII Nipper and Associate Wardens Reed and Hughes because they hold a supervisory position.

Supervisory personnel are generally not liable under section 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979); *Mosher v. Saalfeld*, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979).  To state a claim for relief under section 1983 based on a theory of supervisory liability, Plaintiff must allege some facts that would support a claim that supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'"  *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Under section 1983, liability may not be imposed on supervisory personnel for the actions of their employees under a theory of *respondeat superior*.  *Iqbal*, 556 U.S. at 677.  "In a § 1983 suit or a *Bivens* action - where masters do not answer for the torts of their servants - the term 'supervisory liability' is a misnomer."  *Id.*  Knowledge and acquiescence of a subordinate's misconduct is insufficient to establish liability; each government official is only liable for his or her own misconduct.  *Id.*

"'[B]are assertions . . . amount[ing] to nothing more than a "formulaic recitation of the elements" of a constitutional discrimination claim,' for the purposes of ruling on a motion to dismiss [and thus also for screening purposes], are not entitled to an assumption of truth."  *Moss*, 572 F.3d at 969 (quoting *Iqbal*, 556 U.S. at 1951 (quoting *Twombly*, 550 U.S. at 555)).  "Such allegations are not to be discounted because they are 'unrealistic or nonsensical,' but rather because they do nothing more than state a legal conclusion – even if that conclusion is cast in the form of a factual allegation."  *Id.*

Thus, Plaintiff's allegation that Defendants AC Alomari, CCII Nipper, and Associate

Wardens Reed and Hughes are liable because their subordinates violated Plaintiff's rights is not cognizable.

## II.     CONCLUSION

Plaintiff is given the choice to either file a first amended complaint or to proceed on the claims found cognizable in this order:  (1) for retaliation against Defendants Sgt. Davis, and C/Os Davies and Vargas.  Plaintiff must either notify the Court of his decision to proceed on these cognizable claims, or file a first amended complaint **within 30 days** of the service of this order.  If Plaintiff needs an extension of time to comply with this order, Plaintiff shall file a motion seeking an extension of time no later than thirty days from the date of service of this order.

If Plaintiff chooses to file a first amended complaint, he must demonstrate how the conditions complained of have resulted in a deprivation of Plaintiff's constitutional rights.  *See Ellis v. Cassidy*, 625 F.2d 227 (9th Cir. 1980).  The first amended complaint must allege in specific terms how each named defendant is involved.  There can be no liability under section 1983 unless there is some affirmative link or connection between a defendant's actions and the claimed deprivation.  *Rizzo v. Goode*, 423 U.S. 362 (1976); *May v. Enomoto*, 633 F.2d 164, 167 (9th Cir. 1980); *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).

Plaintiff's first amended complaint should be brief.  Fed. R. Civ. P. 8(a).  Such a short and plain statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957).  Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ."  *Twombly*, 550 U.S. 127, 555 (2007) (citations omitted).

Plaintiff is further advised that an amended complaint supercedes the original, *Lacey v. Maricopa County*, Nos. 09-15806, 09-15703, 2012 WL 3711591, at *1 n.1 (9th Cir. Aug. 29, 2012) (en banc), and must be "complete in itself without reference to the prior or superceded pleading," Local Rule 220.

The Court provides Plaintiff with opportunity to amend to cure the deficiencies identified

by the Court in this order. *Noll v. Carlson*, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Plaintiff may not change the nature of this suit by adding new, unrelated claims in his first amended complaint. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

Based on the foregoing, it is **HEREBY ORDERED** that:

1. Plaintiff's Complaint is dismissed, with leave to amend;
2. The Clerk's Office shall send Plaintiff a civil rights complaint form;
3. **Within 30 days** from the date of service of this order, Plaintiff must either:
   a. file a first amended complaint curing the deficiencies identified by the Court in this order, or
   b. notify the Court in writing that he does not wish to file a first amended complaint and wishes to proceed only on the claims identified by the Court as viable/cognizable in this order; and
4. If Plaintiff fails to comply with this order, this action will be dismissed for failure to obey a court order.

IT IS SO ORDERED.

Dated:   **August 21, 2014**              **/s/ Jennifer L. Thurston**
                                          UNITED STATES MAGISTRATE JUDGE