1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID C. PATKINS, | **Case No.  1:14-cv-00674-LJO-JLT (PC)** |
| Plaintiff, | **FINDINGS AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| ALOMARI, et al., | **(Doc. 34)** |
| Defendants. | **21-DAY DEADLINE** |

Defendants contend Plaintiff failed to exhaust the available administrative remedies prior to filing suit in violation of 42 U.S.C. § 1997e(a).  (Doc. 34.)  The Court agrees and, consequently, recommends that Defendants' motion for summary judgment be **GRANTED**.

## FINDINGS

### A.  Legal Standards

#### 1.  Summary Judgment Standard

Any party may move for summary judgment, which the Court shall grant, if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted); *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (en banc), *cert. denied*, 135 S.Ct. 403 (2014); *Washington Mut. Inc. v. U.S.*, 636 F.3d 1207, 1216 (9th Cir. 2011).  Each party's position, whether it be that a fact is disputed

or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1). The Court may consider other materials in the record not cited to by the parties, although it is not required to do so.  Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *accord Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

The failure to exhaust is an affirmative defense which the defendants bear the burden of raising and proving on summary judgment.  *Jones v. Bock*, 549 U.S. 199, 216, 127 S.Ct. 910 (2007); *Albino*, 747 F.3d at 1166.  The defense must produce evidence proving the failure to exhaust and summary judgment under Rule 56 is appropriate only if the undisputed evidence, viewed in the light most favorable to the plaintiff, shows he failed to exhaust.  *Id.*

### 2. Statutory Exhaustion Requirement

Pursuant to the Prison Litigation Reform Act of 1995, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Prisoners are required to exhaust available administrative remedies prior to filing suit.  *Jones*, 549 U.S. at 211; *McKinney v. Carey*, 311 F.3d 1198, 1199-1201 (9th Cir. 2002).  Inmates are required to "complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006).  Inmates must adhere to the "critical procedural rules" specific to CDCR's process.  *Reyes v. Smith,* --- F.3d ---, 2016 WL 142601, *2 (9th Cir. Jan. 12, 2016).  The exhaustion requirement applies to all suits relating to prison life, *Porter v. Nussle*, 435 U.S. 516, 532 (2002), regardless of the relief both sought by the prisoner and offered by the process, *Booth v. Churner*, 532 U.S. 731, 741 (2001).

On summary judgment, Defendants must first prove that there was an available

administrative remedy which Plaintiff did not exhaust prior to filing suit.  *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (citing *Albino*, 747 F.3d at 1172).  If Defendants carry their burden of proof, the burden of production shifts to Plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him."  *Id.*

"Under § 1997e(a), the exhaustion requirement hinges on the "availability' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones."  *Ross v. Blake*, --- U.S. ---, 136 S. Ct. 1850, 1858 (June 6, 2016).  An inmate is required to exhaust those, but only those, grievance procedures that are "capable of use" to obtain "some relief for the action complained of."  *Id.* at 1858-59, citing *Booth v. Churner,* 532 U.S. 731, 738 (2001).  However, "a prisoner need not press on to exhaust further levels of review once he has [ ] received all 'available' remedies."  *See Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005).

"If the undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56."  *Williams*, at 1166.  The action should then be dismissed without prejudice.  *Jones*, 549 U.S. at 223-24; *Lira v. Herrrera*, 427 F.3d 1164, 1175-76 (9th Cir. 2005).

### 3.  Summary of CDCR's Inmate Appeals Process

The California Department of Corrections and Rehabilitation has a generally available administrative grievance system for prisoners to appeal any departmental decision, action, condition, or policy having an adverse effect on prisoners welfare, Cal. Code Regs., tit. 15, § 3084, *et seq*.  Compliance with section 1997e(a) requires California state prisoners to use that process to exhaust their claims.  *Woodford v. Ngo*, 548 U.S. 81, 85-86, 126 S.Ct. 2378 (2006); *Sapp v. Kimbrell*, 623 F.3d 813, 818 (9th Cir. 2010).

As of 2011, an inmate initiates the grievance process by submitting a CDCR Form 602, colloquially called an inmate appeal ("IA"), describing "the problem and action requested."  Cal. Code Regs., tit. 15, § 3084.2(a).  An IA must be submitted within 30 calendar days of the event or

3

decision being appealed, first knowledge of the action or decision being appealed, or receipt of an unsatisfactory departmental response to an appeal filed. Tit. 15 § 3084.8(b). The inmate is limited to raising one issue, or related set of issues, per IA in the space provided on the form and one form attachment in which he/she shall state all facts known on that issue. Tit. 15 § 3084.2(a)(1),(2),(4). All involved staff members are to be listed along with a description of their involvement in the issue. Tit. 15 § 3084.2(a)(3). Originals of supporting documents are to be submitted with the IA; if they are not available, copies may be submitted with an explanation why the originals are not available, but are subject to verification at the discretion of the appeals coordinator. Tit. 15 § 3084.2(b). With limited exceptions, an inmate must initially submit his/her IA to the first-level. Tit. 15 § 3084.7. If dissatisfied with the first-level response, the inmate must submit the IA to the second-level, and likewise thereafter to the third-level. Tit. 15 § 3084.2, .7. First and second-level appeals shall be submitted to the appeals coordinator at the institution for processing. Tit. 15 § 3084.2(c). Third-level appeals must be mailed to the Appeals Chief via the United States mail service. Tit. 15 § 3084.2(d).

**B. Defendants' Motion on Exhaustion per 42 U.S.C. § 1997e(a)**[1]

Defendants assert that Plaintiff did not exhaust available administrative remedies on either of the claims raised in this action before he filed suit. (Doc. 34.) Thus, the Court must determine if Plaintiff filed any IAs concerning the allegations at issue here. If he did, the Court must determine whether Plaintiff complied with the CDCR's process and if he did not comply, whether this was because the process had been rendered unavailable to him. *Ross*, 136 S. Ct. at 1859; *Sapp*, 623 F.3d at 823.

**1. Plaintiff's Claims**

Plaintiff proceeds on two retaliation claims against Defendant Correctional Officers Davies and Vargas as stated in the First Amended Complaint. (Doc. 13.) In the first claim, Plaintiff alleges that Defendants ransacked his cell on March 26, 2012, which was the day after Plaintiff initiated an IA for property that was lost during his transfer to CCI ("Claim 1"). (Doc.

---

[1] All references to pagination of specific documents pertain to those as indicated on the upper-right corners via the CM/ECF electronic court docketing system.

13, FAC, pp. 10-11; Doc. 15 Screen F&R, 6:8-17; Doc. 17, O Adopt.)  In the second claim, Plaintiff alleges that on June 24, 2012, he gave Vargas an IA regarding not receiving showers as frequently as required, and the next day, June 25, 2012, he alleges the Defendants again ransacked Plaintiff's cell ("Claim 2").  (Doc. 13, FAC, pp. 12-14; Doc. 15 Screen F&R, 6:18-25; Doc. 17, O Adopt.)

Defendants assert they are entitled to summary judgment on both of Plaintiff's claims since he never received a third-level decision on any IA alleging that Defendants retaliated against him for the exercise of his First Amendment rights.  (Doc. 34, 4:19-24.)  The Court rejects Defendants' apparent assumption that a Director's Level response is necessary to satisfy the exhaustion requirement and the mere absence of  such a response entitles them to dismissal. *Brown v. Valoff*, 422 F.3d 926, 935-36 (9th Cir. 2005) ("[A] prisoner need not press on to exhaust further levels of review once he has either received all 'available' remedies at an intermediate level or has been reliably informed by an administrator that no remedies are available.").  Nevertheless, for the reasons discussed, Defendants are entitled to summary judgment on both of Plaintiff's claims.

### a.  Claim 1

Defendants submit evidence that Plaintiff did not file any IAs regarding this incident.  (Doc. 34-1, Wood Decl., ¶¶9-11.)  Plaintiff responds that he included this event in an IA he filed on June 22, 2012.  (Doc. 42, p. 2.)  Defendant's assert that there is no evidence that Plaintiff ever submitted this IA based on a lack of any indication it was received by the appeals coordinator, was assigned a log number, or date stamped for processing.  (Doc. 43 at 3.)  Plaintiff asserts that he handed it to defendant Vargas on June 24, 2012, and thereafter never received a response.  (Doc. 42 at 2.)  However, the June 22, 2012 IA does not suffice for exhaustion purposes as it did not adhere to the "critical procedural rules" within CDCR's inmate grievance process.  *Reyes*, at *2.

First, the June 22, 2012 IA (*see* Doc. 42, pp. 16-17) was not timely as to the retaliatory cell ransacking that allegedly took place on March 26, 2012.  Section 3084.8(b) requires that an

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IA be submitted within 30 days of the events or an inmate's awareness of events that give rise to a claim.  The June 22, 2012 IA was thus untimely as to events that occurred three months earlier.

Second, Plaintiff's primary focus in the June 22, 2012 IA was the infrequency of his access to showers.  (Doc. 42 at 16-17.)  Plaintiff complained that the lack of regular showers constituted damage to his physical and emotional wellbeing.  (*Id*. at 17.)  He complained that prison guards told him to use his toilet to wash and that he was on water restriction.  (*Id.*)  Less than a sentence of this IA was devoted to the allegations of Claim 2.  Plaintiff merely stated that he, "even suffer[ed] a retaliation cell search for asking on 3-26-12 . . ."  (*Id*.)  Plaintiff did not indicate that his cell was ransacked or left in any form of disarray; he did not name or provide any identifying information of Defendants as the offending actors; nor did he give any description of their involvement in the issue which failed to comply with section 3084.2(3) and (4).

Further, Plaintiff's allegation that his cell was searched, because he requested showers, is missing a fundamentally requisite element of a retaliation claim -- protected conduct.  *See Waitson v. Carter*, 668 F.3d 1108, 1114-1115 (9th Cir. 2012); *Rhodes v. Robinson*, 408 F.3d 559, 568 (9th Cir. 2005); *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995).  This is not to say that Plaintiff was required to state facts as to all elements of an eventual legal claim, but he must at least state facts sufficient to notify prison personnel of a problem for exhaustion purposes.  *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009).  The June 22, 2012 does not mention *any* form of protected conduct in the June 22, 2012 IA as the motivating factor for his cell being searched to place prison personnel on notice of his retaliation claim.  (Doc. 42, pp. 16-17.)

Finally, none of the above defects were waived by prison personnel.  Though "a prisoner exhausts 'such administrative remedies as are available,' 42 U.S.C. § 1997e(a), under the PLRA despite failing to comply with a procedural rule if prison officials ignore the procedural problem and render a decision on the merits of the grievance at each available step of the administrative process," *Reyes,* at *3, this is not the case here.  Prison officials never addressed the merits of the June 22, 2012 IA and so did not waive enforcement of the multiple procedural defects/bar discussed here.  *Reyes,* at *2.  Further, since the June 22, 2012 IA was not received by the AC

they were not required to notify Plaintiff under 15 CCR 3084.5(b)(3) why it was not accepted. Defendants' evidence shows that the June 22, 2012 IA was never received by the AC to have been accepted or rejected and Plaintiff provides no evidence upon which to find to the contrary.

Plaintiff also submitted copies of a request for interview, Form 22, which he submitted in late March of 2012.  (Doc. 42, pp. 18.)  In this document, when asked to "Clearly state the service or item requested or reason for interview,"  Plaintiff mentions only that he was being denied frequent showers, was told to use the toilet to wash, and that he was begin denied sufficient outdoor exercise time."  (*Id*. at 18.)  The request was granted in part in that he was assured of regular showers but was informed that recreational activities were suspended at that time.  (*Id*.)  Notably, the Form 22 also fails to list, or otherwise describe the staff members involved and does not describe their involvement in the circumstances at issue, (*id.*), upon which it might be construed to have sufficed to have placed prison officials on notice of his claims for exhaustion purposes.  *Griffin*, 557 F.3d at 1120.  It bears repeating that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."  *Woodford,* 548 U.S. at 91.  CDCR's procedure requires an inmate to initiate the grievance process by describing "the problem and action requested" in a CDCR Form 602.  Tit. 15, § 3084.2(a).  Plaintiff's request for interview on a Form 22 does not suffice for exhaustion purposes.

Finally, as discussed in greater detail under Claim 2, any allegations on Claim 1 in Plaintiff's September 21, 2012 version of IA #12-1985 were untimely under section 3084.8(b) since Plaintiff did not initiate IA #12-1985 until August of 2012.

**b.  Claim 2**

Though Plaintiff filed other IAs that both sides discuss, the pivotal IA on Claim 2 is IA #12-1985.  Defendants assert that IA #12-1985, submitted on August 15, 2012, was untimely for claims based on the cell search that occurred on June 25, 2012 since section 3084.8(b) requires administrative grievance submission within thirty days of the event or action being challenged.

(Doc. 34, 10:23-26, citing SUF ¶¶ 15, 21.)  Defendants further assert that, although one version of this grievance alleged that Defendants' actions were retaliatory, in the version of the grievance accepted for review, Plaintiff only contended that his due process rights were violated during a disciplinary hearing on a CDC 115 based on evidence discovered during the June search of Plaintiff's cell.  (*Id.*, at 11:1-5, citing SUF ¶ 19.)  Regardless, Defendants assert that Plaintiff never received a third-level decision regarding any claims raised in these grievances, so his administrative remedies were not exhausted.  (*Id.*, citing SUF ¶ 20.)

On the first page of IA #12 -1985,[2] which Plaintiff signed on August 13, 2012, Plaintiff stated that the subject of his appeal was "Retaliation in Defiance of Petitioner's Federal Rights." (Doc. 42, p. 39.)  Thereafter Plaintiff explained his issues as "C/O Vargas issued a CDC 115 to injure and discourage Petitioner his right to file a (now missing) grievance (602).  Guilt imposed also violates due process lacking elemental evidence." (*Id.*)  The First Level of review was bypassed.  (*Id.*)

On August 22, 2012, the Second Level rejected IA #12-1985 because it contained only general allegations and failed to state facts or specify an act or decision consistent with the allegations.  (Doc. 42, p. 49.)  It directed that, if this IA related to disposition of the CDC 115, Plaintiff must wait until its adjudication was completed and attach a final copy of the CDC 115 as supporting documentation.  (*Id.*)

Apparently, Plaintiff resubmitted IA #12-1985 sometime before September 18, 2012,[3] which is the date that another Second Level screening issued rejecting, it because it lacked necessary supporting documents.  (Doc. 34-1, p. 35; Doc. 42, p. 50.)

On September 21, 2012, Plaintiff submitted a revised version of IA #12-1985 with the same first page as the version he signed on August 13, 2012, but with a second page that described both the March 2012 and the June 2012 ransacking of his cell by Defendants.  (Doc. 42, p. 41.)  This version was rejected by the Second Level on September 27, 2012 noting that it

---

[2] Neither side submitted a second page IA form signed and dated by Plaintiff on August 13, 2012.

[3] Neither side submitted a copy of the version of IA #12-1985 that caused the September 18, 2012 Second Level rejection letter.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

contained multiple, unrelated issues and requested invalidation of the CDC 115.  (Doc. 34-1, p. 24; Doc. 42, p. 62.)  That letter also proved Plaintiff a blank IA form (602) as well as the attachment form (602-A) since Plaintiff noted being unable to obtain either.  (*Id.*)  Plaintiff was directed to rewrite his IA on the disciplinary issue and to be sure to include the final copy of the CDC 115.  (*Id.*)

On October 4, 2012, Plaintiff again submitted IA #12-1985 -- both the first version which originated this IA, (Doc. 42, p. 39 (date stamped Oct. 04 2012 on right side of first page)) and a second version, dated October 1, 2012 (complaining of and attaching the CDC 115) which is the version that was thereafter processed by the prison (Doc. 42, pp. 27-31, 58-61).

Plaintiff opposes Defendants' motion by arguing that IA #12-1985 was timely as he waited to file it until "[a]fter the 'adjudication process is completed.'"  (Doc. 42, p. 5.)  However, the only applicable adjudication process to the issues raised in IA #12-1985 was on the RVR CDC 115 (based on items confiscated from Plaintiff's cell) that Plaintiff asserted was wrongly charged against him.  Plaintiff appears to have copied the direction in the August 22, 2012 Second Level response to IA #12-1985 which noted that Plaintiff raised both retaliation claims and objection to the CDC 115 and directed that if IA #12-1985 was related to the disposition of the CDC 115, he must wait "until the adjudication process is completed" to attach the final copy of the CDC 115 ruling.  (Doc. 42, p. 49.)  Plaintiff provides no evidence of any requirement prohibiting filing an IA regarding Claim 2 until the RVR adjudication process was completed, and the Court finds none.  Rather, Plaintiff argues that the direction to wait until the adjudication process was complete applied to both his due process claim on the CDC 115 and Claim 2. However, Plaintiff provides neither factual evidence, nor legal precedent for this proposition and the Court finds none.  Plaintiff's attempt to use the direction to wait "until the adjudication process is completed" to justify not filing an IA on Claim 2 until August 13, 2012, is unsupported and contrary to the regulations.

Plaintiff also argues that prison personnel errantly processed IA #12-1985.  (Doc. 42, pp. 4-7, 8-13.)  Plaintiff asserts that, after IA #12-1985 was screened out on September 27, 2012, for

involving multiple unrelated issues (Doc. 42, p. 62), he resubmitted two versions of IA #12-1985 on October 4, 2012 -- one on Claim 2 (*id.*, at pp. 8, 39-41; Doc. 34-1, pp. 32-33), and one regarding the CDC 115 (*id.*, at pp. 8, 58-61; Doc. 34-1, pp. 12-20, 25-31).  Plaintiff argues that though prison personnel thereafter processed IA #12-1985 on his claim regarding the CDC 115, they failed to address his version of IA #12-1985 that addressed Claim 2, despite his diligent persistence.  (Doc. 42, pp. 4-7, 8-13.)  However, any failure to properly process both of Plaintiff's versions of IA #12-1985 does not overcome the untimeliness of Plaintiff's initial submission in August of 2012 for events upon which Claim 2 is based. Thus, Plaintiff failed to exhaust available administrative remedies prior to filing and Defendants are entitled to summary judgment on both of his claims in this action.

## RECOMMENDATION

Based on the foregoing, the Court **RECOMMENDS** that Defendants' motion for summary judgment, filed on April 7, 2016 (Doc. 34), be **GRANTED** and this action be **DISMISSED** without prejudice.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **21 days** after being served with these Findings and Recommendations, the parties may file written objections with the Court.  Local Rule 304(b).  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  *Wilkerson*, 772 F.3d at 838-39 (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   __January 22, 2017__              _____/s/ Jennifer L. Thurston__
                                                                     UNITED STATES MAGISTRATE JUDGE

10